■ PYRAMID CHAMPLAIN COMPANY, Appellant, v R.P. BROSSEAU & COMPANY, Respondent. (Action No.1.) WESTINGHOUSE ELECTRIC SUPPLY COMPANY, Respondent-Appellant, v R.P. BROSSEAU & COMPANY et al., Defendants, and PYRAMID CHAMPLAIN COMPANY et al., Appellants-Respondents. (Action No. 2.) [699 NYS2d 516] —Mikoll, J. Cross appeals from an order and judgment of the Supreme Court (Viscardi, J.), entered October 27, 1998 in Clinton County, upon a decision of the court in favor of defendant R.P. Brosseau & Company and plaintiff Westinghouse Electric Supply Company.

These consolidated actions involve various claims arising out of contracts for electrical work in connection with the construction of the Pyramid Champlain Centre North shopping mall in the Town of Plattsburgh, Clinton County. In early 1987, the owner/developer of the project, Pyramid Champlain Company, entered into three contracts with defendant R.P. Brosseau & Company (hereinafter Brosseau) to furnish and install electrical equipment in two "anchor" stores, Sears and J.C. Penney's; the third contract covered electrical work within the mall building itself (hereinafter the mall contract). Most of the electrical equipment and supplies required for the project were custom designed and ordered by Brosseau from plaintiff Westinghouse Electric Supply Company (hereinafter WESCO), with the understanding that payment therefor could not be made until Pyramid paid Brosseau.

Brosseau first commenced work pursuant to the Sears contract, dated January 13, 1987, and shortly thereafter entered into and commenced work pursuant to the J.C. Pen-

ney's contract, dated February 19, 1997. Although the mall contract was entered into on March 7, 1987, Brosseau was unable to begin performance thereunder until March 30, 1987 due to Pyramid's delay in making the site available and furnishing drawings and specifications. The contracts provided that Brosseau was to submit payment requisitions for labor and materials to Pyramid by the 25th of each month, which would be paid by the 10th of the following month. Initially, Pyramid paid Brosseau pursuant to requisitions that were submitted without dispute. As of April 9, 1987, Brosseau had paid WESCO a total of approximately $149,000 and was in full compliance with the contract with WESCO. Subsequently, however, Pyramid refused to pay requisitions submitted by Brosseau on April 25, 1987 and May 25, 1987, rendering Brosseau unable to pay WESCO for materials shipped after April 9, 1987. Brosseau continued working on the project until June 10, 1987, when it left the site as a result of Pyramid's failure to make payments due under the contracts.[1]

Thereafter, Pyramid commenced action No. 1 against Brosseau alleging, *inter alia*, breach of contract and willful exaggeration of three mechanics' liens Brosseau had filed in connection with each of the contracts. WESCO commenced action No. 2 against Brosseau, Pyramid and others seeking collection of unpaid sums due for materials, equipment and supplies delivered and incorporated into the project. Brosseau asserted claims against Pyramid seeking foreclosure of the three mechanics' liens and damages for, *inter alia*, breach of contract. The actions were subsequently consolidated for discovery and trial and, following motions and discovery, a 16-day nonjury trial was conducted in 1996. In a written decision issued in 1998, Supreme Court determined that Pyramid breached its contracts with Brosseau by unjustifiably failing to pay the requisitions and was directly liable to WESCO based upon an enforceable oral promise to pay for materials shipped after April 9, 1987. Supreme Court further determined that Brosseau was jointly liable with Pyramid for certain amounts awarded to WESCO. Judgment was entered accordingly, prompting these cross appeals by Pyramid and WESCO.

We first take up Pyramid's contention that Supreme Court erred in concluding that it breached its three contracts with Brosseau. We note at the outset that although the scope of our review of this nonjury trial is not limited to determining

1. Pyramid did advance Brosseau a small portion of the requisitioned amount so as to enable him to meet his payroll and keep his crews working on the project.

whether the court's findings are supported by the weight of the credible evidence, we customarily accord considerable deference to the trial court's findings in view of its superior ability to assess credibility and consequently determine the weight to be accorded the evidence (*see, Weinberg v Crilley*, 252 AD2d 861; *Harter v Krause*, 250 AD2d 984). This principle is all the more saliently applied where, as here, the trial was lengthy and included much sharply conflicting testimony. Upon a full review of the record, we are satisfied that ample evidence supports Supreme Court's findings and we find no compelling reason to disturb the credibility determinations which informed them (*see, Weaver v Acampora*, 227 AD2d 727; *New Day Bldrs. v SJC Realty*, 219 AD2d 623, 624).

Dealing first with the J.C. Penney's and Sears projects, Pyramid's site controller testified that he was instructed by his project manager to deny Brosseau's April 25, 1987 and May 25, 1987 payment requisitions on the ground of nonperformance. The testimony established, however, that these projects were substantially completed when Pyramid refused payment: the J.C. Penney's project was substantially complete by March 21, 1987 and the Sears project was 99% complete by June 10, 1987. That which was not complete on the Sears and J.C. Penney's contracts was work that could not be performed until other aspects of the project were completed. An inspection conducted by OSHA established that Brosseau's work was 100% compliant with its inspection standards. Moreover, Pyramid had requested and drawn down funds from the bank funding the project based on the scope of work completed. As noted by Supreme Court, Pyramid produced no evidence to justify its refusal to pay Brosseau the balance due on the Sears and J.C. Penney's contracts.

As to the mall contract, the record contains ample evidence from which Supreme Court could have concluded that Brosseau's failure to complete the contracts was the result of Pyramid's conduct either designed to, or at the very least having the effect of, frustrating its performance. Relying on this evidence, the court concluded that the reasons cited by Pyramid as justifying denial of payment to Brosseau flowed from Pyramid's own actions rather than Brosseau's failure to adhere to the contract specifications or supply the requisite number of workers to complete the job in a timely fashion.

As noted, Brosseau's delay in beginning work on the mall contract was occasioned by Pyramid's failure to make the site available and to provide necessary drawings and specifications. Throughout the project, Pyramid continually made numerous,

substantial alterations to the contract terms, not only impeding Brosseau's work but resulting in expansion of the scope of work in several areas, including temporary lighting, temporary power, fire alarms, fixtures and switch gears. As noted by Supreme Court, "Pyramid had four managers each directing Brosseau to jobs not planned, to change the material used, or to move already installed material without additional compensation." Moreover, while Pyramid apparently knew as early as April 1987 that Brosseau planned to use a particular type of standard electrical cable, it failed to advise him of its intent to prohibit the use of such cable until it was incorporated into the project. As to the myriad of Pyramid's claims of Brosseau's inadequate performance, the court cited the absence of any witness to testify as to any specific failure and it refused to credit "self-serving" memos or letters placed in Brosseau's contract file.

Nor do we find that Supreme Court erred in calculating the damages owed by Pyramid to Brosseau. Having found that Pyramid breached its contract with Brosseau, and crediting Brosseau's testimony as to the reasonable value of the scope of work performed by the contractor hired to complete the project, Supreme Court explicitly declined to accept Pyramid's calculations as to the amounts it was entitled to offset against Brosseau. As with other aspects of the court's determinations clearly based principally on credibility assessments, we find no reason to disturb this finding.

Turning to Pyramid's contention that Supreme Court erred in dismissing its claims against Brosseau for willful exaggeration of mechanics' liens filed in connection with the three contracts, Supreme Court properly determined that it lacked the authority to award such damages. Lien Law § 39 provides that "[i]n any action or proceeding to enforce a mechanic's lien * * * or in which the validity of the lien is an issue", the court may declare the lien void and deny recovery thereon upon a finding that the lienor willfully exaggerated the amount claimed in the notice of lien. Where a lien has been discharged for willful exaggeration, Lien Law § 39-a authorizes the court to award damages against the lienor. It is well settled that "Lien Law § 39 and § 39-a must be read in tandem, and damages may not be awarded under section 39-a unless the lien has been discharged for willful exaggeration" (*Guzman v Estate of Fluker*, 226 AD2d 676, 678; *see, Joe Smith, Inc. v Otis-Charles Corp.*, 279 App Div 1, 4, *affd* 304 NY 684; *see also, Matter of Mohawk Frozen Foods*, 780 F2d 7; *see also, Stamatopoulos v Karasik*, 238 AD2d 688, 691; *Pamco Indus. v*

*MPAC, Inc.*, 231 AD2d 504, 505). It is equally well settled that Lien Law § 39-a is penal in nature and therefore must be strictly construed in favor of the person upon whom the penalty is sought to be imposed (*see, Goodman v Del-Sa-Co Foods*, 15 NY2d 191, 195; *Guzman v Fluker*, *supra*). Here, it is not disputed that two of Brosseau's three mechanics' liens were dismissed five years prior to the commencement of trial as void under *Plattsburgh Quarries v Markoff* (164 AD2d 30) and no action to enforce the third lien was pursued. Pyramid's willful exaggeration claims, therefore, were asserted in the context of an action to collect a debt rather than to enforce a mechanic's lien or litigate its validity.

Pyramid also contends that Supreme Court erred in finding it directly liable to WESCO based upon its oral promise to answer for Brosseau's debt. Absent a writing satisfying the Statute of Frauds (General Obligations Law § 5-701 [a] [2]), a promise to answer for the debt of another is enforceable where it is supported by new and beneficial consideration to the promisor, and where the parties intend that the promisor is to become primarily liable on the debt (*see, Martin Roofing v Goldstein*, 60 NY2d 262, 268-269).

The trial evidence was more than adequate to establish Pyramid's agreement to assume primary responsibility for the materials shipped by WESCO.[2] WESCO's credit manager, Malcolm Tottingham, testified that after WESCO failed to receive payment from Brosseau in May 1987, he called Pyramid's controller, Michael Miecsko, and advised that WESCO would discontinue shipments unless payment was forthcoming. He further testified that Miecsko induced WESCO to continue shipments and to refrain from repossessing previously shipped materials by promising to issue a joint check, payable to Brosseau and WESCO, on June 10, 1987 for all moneys due WESCO. Based on this representation, Tottingham and another WESCO representative testified that they continued to ship materials and in fact traveled to the job site on June 10, 1987 to pick up the $210,000 check, only to learn that they would not be paid. By then, they had shipped an additional $110,000 worth of materials to the project in reliance upon Pyramid's promise. Although Mieczko denied making any such promises or representations to WESCO, Supreme Court did not credit this testimony. The court further cited an affidavit

2. Contrary to Pyramid's suggestions in its brief, our prior determination on this issue (156 AD2d 851) was solely that unresolved questions of fact precluded summary judgment in favor of WESCO as to whether Pyramid assented to payment of Brosseau's debt to WESCO.

from Pyramid's construction manager, submitted in support of a motion for an order restraining WESCO from repossessing the materials, averring that the materials were unique, specially ordered for the project, absolutely essential to its completion, and that Pyramid was fully willing and able to pay for same.

Turning to WESCO's cross appeal, the principal issue is whether Supreme Court erred in declining to find a principal-agent relationship between Pyramid and Brosseau so as to render Pyramid liable for the full amount of Brosseau's liability to WESCO. The significance of this issue to WESCO lies in the fact that although WESCO was awarded the full amount of its underlying claim, i.e., $335,415.57, against both Brosseau and Pyramid, its judgment against Brosseau is considerably larger as a result of the inclusion of contractual interest and counsel fees. Thus, while judgment was entered in favor of WESCO against Pyramid in the total amount of $678,961.63, consisting of $335,415.57 on the underlying claim, $340,581.06 in statutory interest and $2,965 in costs and disbursements, WESCO's judgment against Brosseau is in the amount of $1,219,658.96, comprised of $335,415.57 on the underlying claim, contractual interest of $729,409.39, counsel fees pursuant to the contract in the amount of $152,194, and costs and disbursements in the amount of $2,640. WESCO therefore sought to establish an agency relationship between Pyramid and Brosseau such as would bind Pyramid to all of the terms of WESCO's contract with Brosseau.

An agency relationship may be established by conduct, or by written or oral contract (see, Standard Bldrs. Supplies v Gush, 206 AD2d 720). Here, the contracts between Pyramid and Brosseau contain neither an express provision creating an agency relationship nor language from which one may be implied. An agency relationship by conduct may be established by "words or conduct of a principal, communicated to a third party, that gives rise to an appearance and reasonable belief that an agency has been created and the agent possesses the authority to enter into a transaction" (Hoysradt v Nilles Ford-Mercury, 168 AD2d 824, 825). The record is devoid of any evidence that at the time WESCO entered into its contracts with Brosseau, it was aware of any conduct on the part of Pyramid giving rise to a reasonable belief that an agency relationship had been created which authorized Brosseau to enter into the contracts on Pyramid's behalf or to bind Pyramid to the terms thereof (see, Callanan Indus. v Olympian Dev., 225 AD2d 941; Standard Bldrs. Supplies v Gush, supra). Accordingly, we find no error in Supreme Court's implicit rejection of this claim.

We do find, however, that the judgment must be modified, because as it presently stands WESCO would receive an inequitable and presumably unintended windfall. As previously noted, Supreme Court awarded judgment in favor of WESCO against Pyramid in the amount of $335,415.57, plus statutory interest in the amount of $340,581.06 and costs and disbursements in the amount of $2,965, for a total of $678,961.63. As against Brosseau, Supreme Court determined that WESCO was entitled to receive $335,415.57, plus contractual interest in the amount of $729,409.39, counsel fees per the contract in the amount of $152,194, and costs and disbursements in the amount of $2,640, for total judgment in the amount of $1,219,658.96. Of these amounts, Supreme Court ordered that the core indebtedness of $335,415.57 was the joint and several liability of Pyramid and Brosseau. However, WESCO should not recover interest twice. Therefore, the judgment should be modified so as to provide that the sum of $335,415.57, plus statutory interest in the amount of $340,581.06, is the joint and several liability of Brosseau and Pyramid.

The parties' remaining contentions have been considered and rejected as without merit.

Cardona, P. J., Yesawich Jr., Peters and Mugglin, JJ., concur. Ordered that the order and judgment is modified, on the law and the facts, without costs, by providing that the sum of $675,996.61 owed to Westinghouse Electric Supply Company is the joint and several liability of R.P. Brosseau & Company and Pyramid Champlain Company, and, as so modified, affirmed.