■ LEON L. BLAIR, Doing Business as LEON L. BLAIR GENERAL CONTRACTOR, Respondent, v WILLIAM P. FERRIS JR. et al., Appellants, et al., Defendant. [54 NYS3d 716]—

---

Egan Jr., J. Appeal from a judgment of the Supreme Court (Muller, J.), entered January 19, 2016 in Clinton County, upon a decision of the court partially in favor of plaintiff.

In September 2008, defendant William P. Ferris Jr. (hereinafter Ferris) and defendant Kristen M. Ferris (hereinafter collectively referred to as defendants) entered into a contract with plaintiff to construct a single-family residence upon certain real property located in the City of Plattsburgh, Clinton County. The initial plans called for the construction of a two-story, single-family residence—comprising approximately 2,700 square feet—with an attached two-car garage for the contract price of $277,524; as originally designed, the plans called for a sizeable unfinished storage area on the second floor of the home. The contract further provided that any changes or additional work that was "not specified by [the] blue prints or contract" would be charged at certain specified rates—specifically, labor would be billed at $35 per hour per laborer, equipment would be billed at $120 per hour and materials would be billed at the "[a]s charged price." Thereafter, in January 2009, plaintiff and defendants entered into a second contract that, insofar as is relevant here, modified the billing rates for any changes or additional work performed by increasing the labor rate to $40 per hour per laborer and imposing a 15% mark-up on materials; the equipment rate remained unchanged.[1] A building permit was obtained and, in April 2009, plaintiff began excavating the site.

After the excavation work commenced and shortly before the foundation for the residence was poured, plaintiff learned that defendants had acquired an adjoining lot (thus requiring additional clearing and excavating) and, further, had revised the architectural plans to incorporate an in-law apartment—comprising approximately 900 square feet—into what now qualified under the local zoning ordinance as a two-family residence. According to plaintiff, although defendants provided him with certain elevation details that had been marked up to reflect, among other things, the addition of the in-law apartment, he did not see the revised architectural plans prior to

---

1. It appears that the original contract was revised at the request of defendants' lender, defendant Glens Falls National Bank and Trust Company, to incorporate certain required language. The lender was named as a party defendant because it held a mortgage on the subject property but, by all accounts, has not actively participated in the litigation.

commencing the excavation work.[2] There is no question that, during the course of the ensuing construction, defendants significantly expanded the scope of the project and that plaintiff, in turn, performed certain additional work with respect thereto, and defendants raise no issue as to the quality of the services rendered. There also is no dispute that no written change orders were either requested or prepared, and, in response to informal inquiries as to the cost overruns, plaintiff advised defendants that they were approximately $100,000 over budget.

Plaintiff completed his work on the project in or about December 2009 and, in January 2010, tendered an invoice to defendants requesting payment in the amount of $85,000—a figure that was computed on a time and materials basis and that purportedly represented the additional services and/or materials provided by plaintiff in connection with the project. Defendants declined to pay and, upon the advice of counsel, plaintiff prepared a second invoice in March 2010 in the amount of $160,633—a figure derived based upon the contract price. When defendants did not tender the requested sum, plaintiff filed a mechanic's lien in the amount of $160,633 and thereafter commenced this action to foreclose upon the lien. Defendants answered and counterclaimed for damages in the amount of $129,720—contending that plaintiff had willfully exaggerated the lien.

Following a nonjury trial, Supreme Court found that plaintiff had a valid and existing mechanic's lien in the principal sum of $57,600 plus interest and, accordingly, entered judgment in favor of plaintiff. As to defendants' counterclaim, Supreme Court determined that, although the amount of the lien was incorrect, defendants failed to establish that plaintiff had willfully exaggerated the lien. Defendants now appeal.

Consistent with the provisions of Lien Law § 3, "a contractor who performs labor or furnishes materials for the improvement of real property with the consent, or at the request of, the owner shall have a lien for the principal and interest, of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement. A lienor may seek amounts due from both written contracts and from change orders for extras, depending on

---

2. Indeed, plaintiff later would testify that, had he seen the revised plans "before excavation," he would have told defendants, "[W]hoa, whoa, whoa, we got to reprice this." Ferris, in turn, would testify that although he could not precisely recall when plaintiff saw the revised plans, it was not prior to the execution of the revised contract in January 2009.

whether the owner gave his [or her] consent for the extra work. The lienor's right to recover is limited by the contract price or the reasonable value of the labor and materials provided[,] [and] [t]he lienor has the burden of establishing the amount of the outstanding debt by proffering proof either of the price of the contract or the value of [the] labor and materials supplied" (*DiSario v Rynston*, 138 AD3d 672, 673 [2016] [internal quotation marks, ellipsis and citations omitted]). Proof of damages may be based solely upon the oral testimony of a witness— provided "the witness has knowledge of [either] the actual costs" (*W.M.S. Bldrs. v Newburgh Steel Prods.*, 289 AD2d 567, 567 [2001] [internal quotation marks and citation omitted], *lv denied* 98 NY2d 603 [2002]; *see Electronic Servs. Intl. v Silvers*, 284 AD2d 367, 368 [2001], *lv dismissed* 97 NY2d 700 [2002], *lv denied* 99 NY2d 508 [2003]) or "the actual value of such extra work" (*CNP Mech., Inc. v Allied Bldrs., Inc.*, 84 AD3d 1748, 1749 [2011]). Such knowledge may be gleaned from experience in the field (*see Johnson v Robertson*, 131 AD3d 670, 673 [2015]; *compare Peak v Northway Travel Trailers, Inc.*, 27 AD3d 927, 928-929 [2006]), as well as detailed descriptions and personal observations of—or involvement in—the work performed (*see W.M.S. Bldrs. v Newburgh Steel Prods.*, 289 AD2d at 567; *Austin v Barber*, 227 AD2d 826, 828 [1996]; *see also Electronic Servs. Intl. v Silvers*, 284 AD2d at 368; *compare DiSario v Rynston*, 138 AD3d at 674). Indeed, as long as the damages sought are not premised upon "pure speculation or bare assertions" that, in turn, find no support in the record (*Proper v State Farm Mut. Auto. Ins. Co.*, 63 AD3d 1486, 1487 [2009]), documentary evidence will not be required (*see CNP Mech., Inc. v Allied Bldrs., Inc.*, 84 AD3d at 1749; *Austin v Barber*, 227 AD2d at 828).

As noted previously, there is no question that defendants asked plaintiff to perform additional work on the project and that plaintiff, in turn, provided certain additional services and materials in conjunction therewith.[3] There also is no dispute that plaintiff is a reputable contractor who built a quality home for defendants, and that defendants, in turn, accepted the services and product that plaintiff provided. Hence, our inquiry distills to whether plaintiff tendered sufficient admissible proof to support the damages claimed in the lien.

---

**3.** Although the underlying contracts required that any changes thereto be in writing, this requirement may be modified or eliminated by, among other things, "the general course of conduct between the parties" (*DHE Homes, Ltd. v Jamnik*, 121 AD3d 744, 745 [2014]), and defendants take no issue with the absence of written change orders here.

In this regard, plaintiff testified at length regarding the construction of defendants' residence in general and, more to the point, the additional work that he performed—beyond the scope of the contracts and at defendants' request—and the corresponding value thereof. According to plaintiff, such extra work included, but was not limited to, constructing the in-law apartment ($90,000),[4] performing additional site work ($22,000), installing a radiant heating system on the second floor of the residence ($10,000), finishing the second-floor storage area ($4,000), upgrading the insulation package ($2,200) and staircase ($4,400), providing a finished lawn ($17,000) and certain miscellaneous work associated with the detached garage ($4,000). The valuation figures provided for each task performed were based upon, among other things, plaintiff's 25-plus years of experience as a general contractor and his daily, hands-on participation in the construction of defendants' residence. Although plaintiff admittedly no longer possessed contemporaneous records to document the labor and equipment hours devoted to the project, he compiled a transaction detail setting forth payments made to certain vendors and employees—a compilation that, in turn, was supported by numerous vendor invoices. In addition to plaintiff's testimony and documentary evidence, he also provided the testimony of, among others, a professional engineer and a custom-home contractor, each of whom variously testified as to either the value of the additional work performed on the project or the reasonableness of the valuation figures that plaintiff assigned thereto. To our analysis, such proof was sufficient to establish "the actual value of such extra work" (*CNP Mech., Inc. v Allied Bldrs., Inc.*, 84 AD3d at 1749)—particularly given plaintiff's years of experience in the industry (*see Johnson v Robertson*, 131 AD3d at 673), his daily presence at the construction site and his description of and involvement in the work performed (*see W.M.S. Bldrs. v Newburgh Steel Prods.*, 289 AD2d at 567; *Electronic Servs. Intl. v Silvers*, 284 AD2d at 368; *Austin v Barber*, 227 AD2d at 828), as well as the expert testimony and documentary evidence produced upon his behalf. Hence, we reject defendants' claim that plaintiff's damages were speculative and/or supported only by bare assertions as to the value of the additional work.

---

4. Although the final cost of the in-law apartment significantly exceeded the verbal quote that plaintiff purportedly gave to Ferris at the start of the project, Ferris conceded that plaintiff had not seen the revised architectural plans at the point in time when the alleged quote was given. Rather, as Ferris acknowledged, he simply asked plaintiff for "rough numbers" as to the cost of extending what was then the garage out an additional 30 feet to accommodate the in-law apartment.

Although we have no quarrel with the quality or sufficiency of plaintiff's proof, we are unable to ascertain the basis upon which Supreme Court calculated the $57,600 in damages awarded to plaintiff. The contract price of the home was $277,524, and Supreme Court accepted the dollar figure assigned by plaintiff as to the value of the additional work and services performed beyond the scope of the original contract—$153,600 ($7,000 less than the sum sought in the mechanic's lien),[5] bringing the total cost of the home to $431,124. Additional testimony established that defendants previously had paid plaintiff $310,000—a sum that plaintiff does not dispute—and Ferris testified as to both the work that he and his spouse performed at the residence and the materials for which they separately paid. Supreme Court, adopting the testimony offered by defendants' expert as to the value of the work performed by defendants and taking into consideration the invoices submitted in support of the sums that defendants expended, credited defendants with an additional $96,000 for work that they performed themselves and/or materials for which they directly paid certain vendors.[6]

Although not entirely clear from either the record or Supreme Court's written decision, it appears that Supreme Court arrived at the amount of damages to be awarded to plaintiff—$57,600—by deducting the value of the services/materials provided by defendants ($96,000) from the total value of the additional services and materials furnished to the project ($153,600). Assuming that indeed was the basis upon which the damages awarded to plaintiff were calculated, such analysis—without further explanation—is presumptively flawed in that it appears to fail to account for the fact that defendants already had paid plaintiff $310,000 against the original contract price of $277,524; accordingly, when viewed in the context of the project as a whole and absent an explanation to the contrary, the prior payment made by defendants in excess of the contract price would appear to result in a credit to defendants in the amount of $32,476.[7] Moreover, although Supreme Court's decision and resulting award of damages necessarily implies that there was some overlap between the

**5.** The basis for this difference is not clear from Supreme Court's decision, but plaintiff raises no issue with respect thereto.

**6.** Although plaintiff does not concede the validity of this credit, he did not cross-appeal from Supreme Court's judgment—requesting instead that this Court affirm Supreme Court's award of damages.

**7.** To the extent that Supreme Court may have otherwise accounted for this sum in its damages computation, such adjustment is not readily apparent from the court's decision.

extras claimed to have been provided or paid for by plaintiff and the extras claimed to have been provided or paid for by defendants, the court's decision is not clear on this point.[8] In short, although we find no infirmities in the actual proof adduced at trial, we are unable to ascertain—from either Supreme Court's written decision or the record before us—the basis upon which Supreme Court arrived at the specific amount of damages awarded to plaintiff. Accordingly, that portion of Supreme Court's judgment is reversed, and this matter is remitted to Supreme Court for further proceedings.[9]

That said, and regardless of the manner in which Supreme Court resolves the damages issue upon remittal, we nonetheless reject defendants' assertion that the mechanic's lien filed by plaintiff was willfully exaggerated. Insofar as is relevant here, Lien Law § 39 provides that, "[i]n any action or proceeding to enforce a mechanic's lien upon a private . . . improvement . . . , if the court shall find that a lienor has willfully exaggerated the amount for which he [or she] claims a lien as stated in [the] notice of lien, [such] lien shall be declared to be void and no recovery shall be had thereon" (*see Pyramid Champlain Co. v Brosseau & Co.*, 267 AD2d 539, 542 [1999], *lvs denied* 94 NY2d 760 [2000]). Additionally, where such lien has been declared void by a court, the lienor "shall be liable in damages to the owner or contractor" (Lien Law § 39-a). "Lien Law § 39 and § 39-a must be read in tandem, and damages may not be awarded under [the latter provision] unless the lien has been discharged for willful exaggeration" (*Pyramid Champlain Co. v Brosseau & Co.*, 267 AD2d at 542 [internal quotation marks and citation omitted]).

"It is well established that [i]naccuracy in the amount of [the] lien, if no exaggeration is intended, does not void a mechanic's lien; willfulness also must be shown" (*Goodman v Del-Sa-Co Foods*, 15 NY2d 191, 194 [1965] [internal quotation marks and citations omitted]; *see Fiberglass Fabricators, Inc. v C.O. Falter Constr. Corp.*, 117 AD3d 1540, 1541 [2014]). Significantly, "[t]he fact that a lien may contain improper

8. We say "necessarily" because if Supreme Court did not in fact conclude that some of the services/materials allegedly provided by plaintiff were actually paid for or provided by defendants, then the $96,000 credit to defendants would be unwarranted, as that amount would represent a contribution to the overall project that was separate and distinct from the services and materials provided by plaintiff.

9. Our decision in this regard should not be read as suggesting that an award of damages to plaintiff is unwarranted. Rather, we are simply saying that we are unable to follow the computations undertaken by Supreme Court in arriving at the damages awarded here.

charges or mistakes does not, in and of itself, establish that a plaintiff wilfully exaggerated a lien" (*Park Place Carpentry & Bldrs., Inc. v DiVito*, 74 AD3d 928, 929 [2010] [internal quotation marks, brackets and citation omitted]). The party opposing the lien must "show that the amounts set forth [in the lien] were intentionally and deliberately exaggerated" (*Garrison v All Phase Structure Corp.*, 33 AD3d 661, 662 [2006] [internal quotation marks and citations omitted]; *see Fiberglass Fabricators, Inc. v C.O. Falter Constr. Corp.*, 117 AD3d at 1541), and, because Lien Law § 39-a is punitive in nature, it "must be strictly construed in favor of the person upon whom the penalty is sought to be imposed" (*Pyramid Champlain Co. v Brosseau & Co.*, 267 AD2d at 543; *accord Saratoga Assoc. Landscape Architects, Architects, Engrs. & Planners, P.C. v Lauter Dev. Group*, 77 AD3d 1219, 1223 [2010]).

Plaintiff testified that, in advance of preparing the final invoice, he approached Ferris and inquired as to whether Ferris would prefer to be billed for the numerous changes that were made to the project on a time and materials basis as opposed to "going by the contract." According to plaintiff, billing defendants on a time and materials basis would be mutually advantageous; defendants would save "some money" and he would be spared the "excruciating" task of itemizing all of the additional work performed. Ferris purportedly agreed and, after applying a discount of approximately 272 labor hours, plaintiff presented defendants with an invoice in January 2010 in the amount of $85,000. When plaintiff received a letter from defendants' attorney, he retained counsel of his own, who advised him to "do the excruciating break-down and to come up with a figure that reflect[ed] the contract" price. Plaintiff did so and tendered a March 2010 invoice to defendants reflecting a final amount due of $160,633. Shortly thereafter, plaintiff filed the subject mechanic's lien—claiming $160,633 as the sum due and owing.

Although the final (and revised) invoice indeed contained a computational error[10] and the amount sought in the resulting lien was at variance with the proof adduced at trial,[11] the case law makes clear that mistakes and/or computational errors

---

**10.** The revised contract called for a 15% mark-up on materials but, in preparing the final invoice, plaintiff admittedly applied that percentage mark-up to his labor costs as well.

**11.** Plaintiff claimed in the mechanic's lien that the total agreed-upon price and value of the labor and materials for the project was $438,157, and he testified at trial that defendants had paid him $310,000—leaving a balance due of $128,157, which exceeded the amount sought in the lien by $32,476.

will not be sufficient to establish that the lien was deliberately and willfully exaggerated (*see Goodman v Del-Sa-Co Foods*, 15 NY2d at 194; *Park Place Carpentry & Bldrs., Inc. v DiVito*, 74 AD3d at 929). Notably, plaintiff explained the apparent discrepancy between the sums claimed in the January 2010 and March 2010 invoices—stating that the former was computed on a time and materials basis while the latter was calculated based upon the contract price—and the record is otherwise void of any evidence that plaintiff willfully and deliberately exaggerated the sum sought in the subject mechanic's lien (*compare Fiberglass Fabricators, Inc. v C.O. Falter Constr. Corp.*, 117 AD3d at 1541). Accordingly, Supreme Court quite properly rejected defendants' attempt to void the lien. Defendants' remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Lynch, Devine and Clark, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded plaintiff damages in the amount of $57,600; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.