■ STEVEN STRONG DEVELOPMENT CORPORATION, Appellant, v WASHINGTON MEDICAL ASSOCIATES et al., Respondents. [759 NYS2d 186] —Spain, J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered March 11, 2002 in Albany County, upon a decision of the court in favor of defendants.

On April 26, 1989, plaintiff, a real estate development company, entered a written development agreement signed by its president and sole stockholder, Steven Strong, with defendant Washington Medical Associates (hereinafter WMA), a general partnership which included Strong and defendant James Striker among its partners. WMA was formed for the purpose of developing a parcel of leased real property containing an existing building located at 1365 Washington Avenue in the City of Albany for use as a medical office building. Pursuant to the development agreement, plaintiff agreed that, in cooperation with WMA, it would, inter alia, oversee the conceptual design phase of the project; contract for and obtain approval for preliminary plans and specifications for the approved design; contract for the preparation of final plans; submit budgeting for construction costs; apply for the required governmental approvals; undertake the awarding of the

---

construction contract; secure suitable financing; and, finally, supervise the construction and completion of the project. The development agreement provided that plaintiff would receive a developer's fee to be earned on the "[d]ate of [s]ubstantial [c]ompletion" of the project, a phrase specifically defined in paragraph 1.1 of the agreement.

Over the course of the next several years, the scope of the planned project was expanded, WMA leased a larger adjacent parcel, several partners withdrew from WMA and, by 1995, WMA consisted of only Strong and Striker as equal partners who had reached an impasse. In January 1995, using plaintiff's letterhead, Strong sent Striker a letter acknowledging that their efforts on the project had failed, the property had been listed for sale and he had "acquiesced to foregoing [his] fee." In November 1995, Strong assigned his interest in WMA to defendant Kathy Striker and neither plaintiff nor Strong performed further pursuant to the development agreement. WMA thereafter entered agreements with other development companies which oversaw the completion of two office buildings and a parking garage, during which, in May 1998, Strong sent WMA a demand to be paid his developer's fee pursuant to their unfulfilled 1989 development agreement.

WMA refused to pay, prompting plaintiff to commence this action for breach of contract and unjust enrichment, claiming that 80% of the work required by the development agreement had been performed when defendants terminated plaintiff's services, thereby breaching that agreement. Following a bench trial, Supreme Court dismissed plaintiff's complaint with prejudice and ordered that judgment be entered in defendants' favor based upon annexed itemized findings of fact and conclusions of law, concluding that plaintiff had failed to "substantially complete" its obligations under the development agreement so as to be entitled to the developer's fee and, by 1995, had abandoned and repudiated the contract.

On plaintiff's appeal, we affirm, as a full review of the record provides compelling evidence—much of it not substantially refuted—to support Supreme Court's findings and conclusions, as well as its underlying credibility determinations. In reviewing the court's decision rendered after this nonjury trial, we have considered the probative weight of the evidence and the inferences to be drawn therefrom, although we have, as is customary, accorded considerable deference to the court's findings of fact which rested in large measure on the credibility of witnesses, in view of its superior ability to observe and assess witnesses (*see Pyramid Champlain Co. v Brosseau & Co.*, 267

AD2d 539, 540-541 [1999], *lv denied* 94 NY2d 760 [2000]; *Winkler v Kingston Hous. Auth.*, 259 AD2d 819, 823 [1999]).

Addressing plaintiff's breach of contract cause of action, it is firmly established that as a general rule, "[t]he written terms and conditions of a contract define the rights and obligations of the parties where the language employed is clear and unambiguous" (*Dierkes Transp. v Germantown Cent. School Dist.*, 295 AD2d 683, 684 [2002]; *see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162-163 [1990]; *Hawkins Home Groups v Southern Energy Homes*, 276 AD2d 866, 867 [2000]). Here, the development agreement set forth the exclusive terms under which plaintiff earned and was to be paid a developer's fee, requiring "[s]ubstantial [c]ompletion of the [p]roject." This condition precedent was contractually defined in paragraph 1.1 as the date on which plaintiff delivered to WMA a certificate of an architect stating that (1) the project has been completed subject only to the completion of items costing a total not to exceed $10,000, "which do not materially adversely affect the use of the [p]roject," and (2) "all building and other required permits have been obtained and all applicable zoning and use laws, ordinances and regulations and agreements permit the occupancy and use of the [p]roject for the purposes contemplated." No provision was included for partial payment of a developer's fee based upon partial completion of plaintiff's obligations under the development agreement.

The proof adduced at trial, including Strong's testimony, overwhelmingly established that plaintiff never obtained construction financing, signed construction contracts, or began construction of any building and, consequently, that by 1995 plaintiff had not substantially completed its obligations outlined in the development agreement and which were a condition precedent to its entitlement to any developer fee. As such, plaintiff failed to prove its entitlement, under the terms of the agreement, to the developer's fee. Plaintiff's claim that it performed "approximately 80%" of the work contemplated by the agreement is both unsupported by the evidence and insufficient to support its claim to any fee provided by the agreement.

Likewise without merit is plaintiff's claim that its nonperformance of contractual obligations was attributable to WMA's termination and replacement of it as developer—conduct which plaintiff describes as constituting a breach of their agreement. Initially, in the absence of some factor excusing compliance with the contract, plaintiff—in order to maintain an action for damages or specific performance of the agreement based upon

WMA's nonperformance—"must demonstrate that a tender of [its] own performance was made" (*Madison Invs. v Cohoes Assoc.*, 176 AD2d 1021, 1021 [1991], *lv dismissed* 79 NY2d 1040 [1992]; *see First Frontier Pro Rodeo Circuit Finals v PRCA First Frontier Circuit*, 291 AD2d 645, 645-646 [2002]). With regard to its undisputed nonperformance, plaintiff failed to adduce evidence in support of its claim that either its continued performance was obviated by acts of WMA amounting to an anticipatory breach or that WMA would be unable to perform (*see Madison Invs. v Cohoes Assoc., supra* at 1021-1022). Rather, as Supreme Court's findings reflect, WMA's replacement of plaintiff as the developer in 1996 came only after plaintiff failed to fulfill its contractual obligations; Strong had relinquished his interest in WMA, expressly conceded the failure of the project and waived the developer's fee; and the parties to the agreement had reached an impasse. Plaintiff's proof did not demonstrate that the actions of WMA or its partners either prevented plaintiff's performance by "greatly disrupt[ing] and frustrat[ing] [plaintiff's] performance" (*Young v Whitney*, 111 AD2d 1013, 1014 [1985]) or amounted to a breach of the implied covenant of good faith and fair dealing so as to excuse plaintiff's further performance under the agreement (*see Sunshine Steak, Salad & Seafood v W.I.M. Realty*, 135 AD2d 891, 892 [1987]; *cf. Bombardier Capital v Reserve Capital Corp.*, 295 AD2d 793, 795 [2002]; *Bass v Sevits*, 78 AD2d 926, 927 [1980]; *Cauff, Lippman & Co. v Apogee Fin. Group, Inc.*, 807 F Supp 1007, 1022 [1992]).

Moreover, the evidence and testimony amply support Supreme Court's factual findings that by late 1995, at the latest, the parties, particularly plaintiff, had abandoned the development agreement by conduct which was "mutual, positive, unequivocal, and inconsistent with an intent to be bound by the contract's terms" (*AEB & Assoc. Design Group, Inc. v Tonka Corp.*, 853 F Supp 724, 733 [1994]; *see Green v Doniger*, 300 NY 238, 245 [1949]; *Douglas Constr. of Fulton County v Marcais*, 239 AD2d 803, 803-804 [1997]; *Rosiny v Schmidt*, 185 AD2d 727 [1992], *lv denied* 80 NY2d 762 [1992]; *cf. Savitsky v Sukenik*, 240 AD2d 557, 559 [1997]; *Atlantic Co. v Jarll Realty Corp.*, 36 AD2d 883, 884 [1971]). In this regard, by 1995, plaintiff—acting through Strong—had not only ceased progressing on or performing any work required by the development agreement and all efforts related to the project, but had also expressly acquiesced to foregoing the developer's fee and selling the property, and the developer's fee was omitted as a liability of WMA on documents prepared by Strong. Strong had also withdrawn from WMA. Plaintiff never requested a

developer's fee until 1998, after another developer had overseen completion of one of the buildings and begun another. WMA, thus, met its burden at trial of establishing that neither plaintiff nor Strong engaged in any significant activity after 1994 which was consistent with or evinced an intent to remain bound by the development agreement and, to the contrary, that plaintiff's conduct, correspondence and the attendant circumstances demonstrated plaintiff's unequivocal repudiation of and refusal to perform the agreement, i.e., abandonment (*see AEB & Assoc. Design Group, Inc. v Tonka Corp., supra*).

Plaintiff's second cause of action for damages in quantum meruit, premised upon an implied or quasi contract, fails because at the time plaintiff performed the work and services for which it seeks compensation, a valid and enforceable written contract existed which covered this dispute between the parties regarding compensation, i.e., it clearly defined the terms and conditions governing plaintiff's entitlement to compensation in the form of a developer's fee (*see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388-389 [1987]; *A. Servidone, Inc. v Bridge Tech.*, 280 AD2d 827, 830 [2001], *lv denied* 96 NY2d 712 [2001]; *Bronx Store Equip. Co. v Westbury Brooklyn Assoc.*, 280 AD2d 352, 353 [2001]; *Unisys Corp. v Hercules Inc.*, 224 AD2d 365, 367 [1996]; *Jaros, Baum & Bolles v Rosenfeld*, 214 AD2d 380 [1995]; *cf. First Frontier Pro Rodeo Circuit Finals v PRCA First Frontier Circuit*, 291 AD2d 645, 646 [2002], *supra* [written contract not intended to govern dispute]; *Douglas Constr. of Fulton County v Marcais, supra* at 804 [parties mutually abandoned contract, so the plaintiff entitled to recover on theory of quantum meruit for services and labor *thereafter* provided]; *see also* 22A NY Jur 2d, Contracts §§ 509-511, 586, 587, 594). Inasmuch as the development agreement was in effect at the time plaintiff performed, and plaintiff neither demonstrated that the contract had been fraudulently induced, rescinded, abandoned, breached, frustrated or waived by WMA nor established that the contract was otherwise unenforceable, recovery based upon unjust enrichment is not available to plaintiff (*see Unisys Corp. v Hercules Inc., supra* at 367; *H.B.L.R., Inc. v Command Broadcast Assoc.*, 156 AD2d 151, 152 [1989]; *Buckley & Co. v City of New York*, 121 AD2d 933, 935-937 [1986], *lv dismissed* 69 NY2d 742 [1987]; *cf. Douglas Constr. of Fulton County v Marcais, supra* at 804; *Taylor & Jennings v Bellino Bros. Constr. Co.*, 106 AD2d 779, 780 [1984]). Plaintiff's remaining contentions lack merit.

Cardona, P.J., Crew III, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed, with costs.