■ In the Matter of NEW YORK STATE WORKERS' COMPENSATION BOARD, as Administrator of the Workers' Compensation Law and Attendant Regulations and as Successor in Interest to the MANUFACTURING SELF INSURANCE TRUST FUND, Respondent, v MURRAY BRESKY CONSULTANTS, LTD, Appellant. [65 NYS3d 590]—

Rumsey, J. Appeal from an order of the Supreme Court (McNally Jr., J.), entered September 7, 2016 in Albany County, which, among other things, granted petitioner's application, in a proceeding pursuant to CPLR article 77, for judicial apportionment of settlement proceeds.

The Manufacturing Self Insurance Trust Fund (hereinafter the trust) is a former group self-insured trust that was formed in 1997 to allow its members—employers subject to the Workers' Compensation Law—to self-insure against the payment of workers' compensation claims (*see* Workers' Compensation Law § 50 [3-a]; 12 NYCRR 317.2 [i]; 317.3). In 2007, petitioner determined that the trust was significantly underfunded and terminated its status as a group self-insurer, thereby assuming administration and final distribution of the trust's assets and liabilities (*see* 12 NYCRR 317.20). Respondent was a member of the trust from 2001 until it was terminated. In January 2008, petitioner commenced an action to recover the trust's deficit against employers who had been members of the trust, including respondent, alleging that each was jointly and severally liable for the deficit (*see* State Finance Law § 18). Thereafter, respondent entered into a settlement agreement to resolve petitioner's claim against it, pursuant to which respondent paid its pro rata share of the deficit—approximately $1.2 mil-

lion—and petitioner and respondent each released the other from further claims associated with the trust.[1]

Having reserved such right under the settlement agreement, respondent then commenced an action against certain former trustees and administrators to recoup the amount it paid petitioner to settle its portion of the trust deficit.[2] Petitioner thereafter commenced an action for damages against many of the same defendants and discovered that certain of the defendants common to both actions were covered by an eroding $1,000,000 liability errors and omissions insurance policy, pursuant to which any defense costs incurred on behalf of an insured reduced the coverage available to pay any claims. In light of the fact that continued litigation would deplete the coverage available to satisfy their respective claims, the parties entered into a memorandum of understanding by which they agreed, among other things, to cooperate in settlement of their actions and that, if a mutually agreeable settlement was reached, a proceeding would be commenced, pursuant to CPLR article 77 or a similar mechanism, for judicial approval of any settlement agreements and allocation of the settlement proceeds. Ultimately, the parties jointly recovered approximately $945,000 in settlement of both actions.

Petitioner then commenced this proceeding pursuant to CPLR article 77, requesting, among other things, that Supreme Court approve the subject settlement agreements and allocate all settlement proceeds to petitioner to reduce the trust deficit. Notice of the proceeding was sent to all former members of the trust, after which respondent objected to petitioner's application, arguing, among other things, that petitioner failed to provide a verified account as required by CPLR 7702 and asserted a counterclaim alleging that it was entitled to, among other things, all recovered settlement proceeds. As relevant here, Supreme Court approved the subject settlement agreements, awarded petitioner all jointly-recovered settlement proceeds and dismissed respondent's objections and counterclaim. Respondent now appeals.

Allocation of the available settlement proceeds turns on the interpretation of the two applicable agreements—the settlement agreement and the memorandum of understanding—in

---

1. The settlement agreement recites that the amount paid by respondent was 115% of its pro rata allocation of the trust deficit as estimated on November 30, 2008.

2. We previously determined that respondent had stated a claim for common-law indemnification in that action (*Murray Bresky Consultants, Ltd v New York Compensation Manager's Inc.*, 106 AD3d 1255 [2013]).

accordance with well-known principles of contractual interpretation. "Construction of an unambiguous contract is a matter of law, and the intention of the parties may be gathered from the four corners of the instrument and should be enforced according to its terms. The court should construe the agreements so as to give full meaning and effect to the material provisions. A reading of the contract should not render any portion meaningless. Further, a contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose" (*Beal Sav. Bank v Sommer*, 8 NY3d 318, 324-325 [2007] [internal quotation marks and citations omitted]).

The provisions of the settlement agreement and the memorandum of understanding relevant to the instant dispute regarding allocation of the jointly-recovered settlement proceeds are clear and unambiguous. In that regard, the settlement agreement: (1) contains respondent's express reservation of its claims against any former trustees, the trust's former administrator and any professionals engaged by the former trustees or former administrator; and (2) provides that any damages recovered by petitioner from third parties were to be applied first to satisfy the trust's obligations and that any remaining surplus would then be allocated to the settling trust members on a pro rata basis. In relevant part, the memorandum of understanding required judicial allocation of all proceeds received upon settlement of the parties' respective actions against the former trustees, administrator and professionals by the court in the CPLR article 77 proceeding to be commenced upon settlement.

Notably, it is apparent from the plain language of the memorandum of understanding that the parties intended to maximize the insurance proceeds available for settlement of their respective actions, but did not agree on how the settlement proceeds were to be allocated when they executed that agreement. The parties agreed that respondent had the right to seek proposed allocation of the jointly-recovered settlement proceeds, including a claim for counsel fees, and that no activities undertaken by, or on behalf of, respondent after May 31, 2012 could be used as justification for any such proposed allocation to respondent. The parties also acknowledged that petitioner would oppose any application for allocation of jointly-recovered settlement proceeds to respondent until all trust obligations were satisfied and further agreed that their dispute regarding allocation of the jointly-recovered settlement proceeds would be judicially resolved in the CPLR article 77 proceeding required to be commenced following settlement of both actions.

In the settlement agreement, respondent retained its right to independently pursue its claims directly against the former trustees, administrators and professionals. The jointly-recovered settlement proceeds were recovered in satisfaction of the claims that were independently asserted by petitioner and by respondent. Accordingly, respondent is entitled to share in the jointly-recovered settlement proceeds toward satisfaction of its independent claims—regardless of whether a trust surplus exists—with the allocation of the proceeds to be made by the court in the instant CPLR article 77 proceeding.

The provision of the settlement agreement governing allocation of damages obtained from third parties by petitioner is unambiguously applicable by its terms only to the share of the jointly-recovered settlement proceeds that are ultimately allocated to petitioner. This interpretation gives full meaning and effect to the material terms at issue, including respondent's reservation of its claims against the parties formerly responsible for administration of the trust, the agreement that allocation of the jointly-recovered settlement proceeds would be made in the instant CPLR article 77 proceeding and the provision precluding respondent from using activities undertaken after May 31, 2012 to justify a claim to allocation of the settlement proceeds. Petitioner's contrary view—that it is entitled to all settlement proceeds because they were insufficient to satisfy the trust's outstanding obligations and, therefore, that no surplus existed for allocation to former trust members, including respondent—is counter to the plain language of the settlement agreement and would impermissibly render meaningless the express reservation to respondent of all of its claims against former trustees, administrators and professionals. For petitioner's argument—that all damages recovered from any third party from any source must first be used to satisfy the trust's outstanding obligations—to prevail, the settling members, like respondent, would have had to have waived their claims against such third parties or subordinated their independent claims to petitioner's claims. The settlement agreement contains no such terms. Thus, the matter must be remitted for allocation of the jointly-recovered settlement proceeds between petitioner and respondent and, as to any such proceeds allocated to petitioner, a determination of whether there are

surplus funds remaining for distribution among the settling former trust members, including respondent.[3]

We further conclude that Supreme Court erred by failing to order petitioner to file a verified accounting. CPLR 7702 provides that a trustee's petition for judicial settlement of an intermediate or final account "shall be accompanied by an account verified in the form required by [SCPA 2209]." A verified account must contain "a true statement of all [the trustee's] receipts and disbursements on account of the [trust] and of all money or other property belonging to the [trust] which have come into [the trustee's] hands or been received by any other person by [the trustee's] order or authority for [the trustee's] use and [state] that [the trustee] does not know of any error or omission in the account to the prejudice of any creditor of, or person interested in, the [trust]" (SCPA 2209).

The plain language of CPLR 7702 requires that a verified accounting be submitted only where a trustee petitions Supreme Court for judicial settlement of an account. Petitioner did not submit a verified accounting. However, its request that the court declare that the trust deficit exceeded the settlement proceeds—which is a determination required with respect to allocation of the settlement proceeds in accordance with the parties' agreements—necessarily requires examination of all trust receipts and disbursements, thereby requiring the court to undertake the same settling of petitioner's account as it would in a proceeding expressly titled as such. Accordingly, we conclude that the court erred in holding that a verified accounting was not required to be filed in this proceeding and, consequently, by proceeding to determine that no surplus existed for distribution for former trust members in the absence of the required accounting. On remittal, petitioner shall file a verified accounting in the form mandated by SCPA 2209 and respondent shall be entitled to exercise its right to depose the trustee in this CPLR article 77 proceeding as to any matter related to administration of the trust, in accordance with the provisions of CPLR article 31 (see CPLR 408, 7701).

Egan Jr., J.P., Devine, Clark and Mulvey, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as (1) awarded petitioner all jointly-recovered settlement proceeds, (2) dismissed respondent's objections, and (3) dismissed respondent's counterclaim to the extent that it sought an accounting, allocation and pay-

---

**3.** The counterclaim was properly dismissed to the extent that respondent may have been seeking monetary damages in excess of the jointly-recovered settlement proceeds.

ment to respondent of jointly-recovered settlement proceeds; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.