Ficel Transp., Inc. v State of New York (2022 NY Slip Op 05910)

Ficel Transp., Inc. v State of New York

2022 NY Slip Op 05910

Decided on October 20, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 20, 2022

534146
[*1]Ficel Transport, Inc., et al., Appellants, et al., Claimants,
v
State of New York, Respondent.

Calendar Date:September 8, 2022

Before:Lynch, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Phillips Lytle LLP, Buffalo (Craig R. Bucki of counsel), for appellants.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondent.

Lynch, J.P.
Appeal from an order of the Court of Claims (Frank P. Milano, J.), entered September 9, 2021, which, among other things, granted defendant's motion for summary judgment dismissing the claim.
Claimants were members of the Transportation Industry Workers' Compensation Trust (hereinafter the trust), a group self-insurance trust that was terminated in 2008 because of poor financial conditions. The Workers' Compensation Board assumed administration of the trust and, after an accounting in 2010, calculated the cumulative trust deficit to be approximately $140 million. All former members of the trust were invoiced for 100% of their proportional shares of the deficit and provided with payment options. According to claimants, however, the Board maintained that former trust members remained jointly and severally liable for the trust deficit regardless of payment (see Workers' Compensation Law § 50 [3-a] [3]; New York State Workers' Compensation Bd. v Any-Time Home Care Inc., 156 AD3d 1043, 1045 [3d Dept 2017]). Claimants therefore declined to pay their invoices because, among other reasons, the Board would not promise to release them from further liability in exchange. In November 2010, certain of the former trust members commenced litigation challenging the 2010 assessment (hereinafter the Riccelli action); claimants were not among them. The petitioners in the Riccelli action obtained a stay of the Board's collection effort against them; the Board later violated the stay, resulting in a contempt penalty (see Riccelli Enters., Inc. v State of N.Y. Workers' Compensation Bd., 142 AD3d 1352, 1354 [4th Dept 2016]).
The Board transferred the trust's outstanding injured worker claims to an independent insurance carrier (see Workers' Compensation Law § 50 [3-a] [7] [a]), and, after an accounting in 2013, the trust deficit was revised to $68.1 million. All nonsettling former trust members, except the Riccelli petitioners, were informed of their proportional shares of the recalculated deficit. They were also advised that the Board would "commence litigation against members of [the trust] that refuse to settle, requiring those [members] to spend substantial amounts of time and money" litigating their liability.
Claimants chose to settle. Under the resulting settlement agreements (hereinafter the 2013 agreements), each claimant agreed to pay 100% of its respective proportional share of the deficit and, among other things, waived its right to challenge the assessments. As relevant here, the agreements each contained a paragraph providing that the Board would "not enter into any [a]greement with other former [t]rust members or their representative counsel which contains more favorable terms than this [a]greement unless the Board shall agree to extend the same terms to the [m]ember." The parties call this the "most favored nations" clause (hereinafter the MFN clause).
In 2018, after eight years of litigation, the Riccelli action ended in a settlement. Under the [*2]terms of the stipulation of settlement (hereinafter the Riccelli stipulation), the Riccelli petitioners received 15% reductions to their proportional shares of the trust deficit along with additional offsets to their monthly repayment obligations. As with the 2013 agreements, each Riccelli petitioner also executed a settlement agreement setting forth that petitioner's proportional share of the deficit — after applying the 15% reduction — and a new menu of repayment plans, including a 15-year option with a 3.75% interest rate. Riccelli petitioner Shea Nassau Suffolk Delivery Corporation selected the 15-year repayment plan, obliging it to make 180 payments of $1,051.22 to discharge its $144,553.41 share of the trust deficit plus 3.75% interest. Pertinent here, Shea Nassau's monthly offset exactly equaled its monthly payment, thus eliminating its liability entirely.
In accord with the MFN clause, the Board offered claimants 15% reductions to their proportional shares of the deficit and the new repayment plan options. The Board did not, however, offer claimants the monthly offsets received by the Riccelli petitioners, prompting claimants to file this breach of contract claim. Relying on the complete elimination of Shea Nassau's liability, claimants alleged that the MFN clause entitled them to the same treatment and sought a judgment returning all payments already made and to be made during the pendency of this claim.
Following joinder of issue, claimants and defendant each moved for summary judgment. The Court of Claims rejected claimants' theory, holding that the MFN clause applied only to more favorable calculations of their proportional shares or repayment options, to which the monthly offsets bore no relationship. Accordingly, the court granted defendant's motion, denied claimants' cross motion and dismissed the claim. Claimants appeal.[FN1]
A "settlement agreement is a contract" (Erie Blvd. Hydropower, L.P. v State of New York, 113 AD3d 906, 907 [3d Dept 2014]). "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent" (Donohue v Cuomo, 38 NY3d 1, 12 [2022] [internal quotation marks and citations omitted]). Where, as here, the contract is unambiguous, its construction is a matter of law, and "the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole" (Gaines Mar. & Servs., Inc. v CMS Mar. Stor., LLC, 176 AD3d 1534, 1535 [3d Dept 2019] [internal quotation marks and citation omitted]; see Donohue v Cuomo, 38 NY3d at 12-13; Matter of New York State Workers' Compensation Bd. v Murray Bresky Consultants, Ltd, 155 AD3d 1408, 1410 [3d Dept 2017]). In that regard, "a contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose" (Beal Sav. Bank v [*3]Sommer, 8 NY3d 318, 324-325 [2007] [internal quotation marks and citation omitted]; accord Matter of New York State Workers' Compensation Bd. v Murray Bresky Consultants, Ltd, 155 AD3d at 1410).
At issue on this appeal is the scope of the MFN clause and, more particularly, whether the Riccelli offsets fall within its embrace. Considering the outlined principles, the terms set forth in the 2013 agreements, including the MFN clause, define the duties and obligations assumed by a claimant or the Board in settling that claimant's deficit liability.[FN2] In that regard, the MFN clause is triggered when a subsequent settlement agreement with a former trust member includes terms that would inure to a claimant's benefit.
Our interpretation takes account of the intent of the parties to the 2013 agreements to finally resolve claimants' trust deficit obligations and any proceedings actually or potentially arising therefrom. This intent manifests in terms requiring claimants to forswear actions against fellow settling trust members, former trust administrators and the Board itself. Correspondingly, the Board gave up its right to collect statutory interest and fees, committed to requiring future settling trust members to disclaim contribution actions and promised to release claimants from joint and several liability arising from the trust. The MFN clause implicates "any [a]greement" containing "more favorable terms than this [a]greement," expressly invoking the terms of the 2013 agreements as the bases for comparison. Given this context, we agree with defendant that the MFN clause is triggered by terms in another settlement agreement addressed to the same subject matter as the terms received by a claimant (compare Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 404 [2009]).
In light of our interpretation, identifying the nature of the offsets is critical. Defendant asserts that the monthly offsets represent both compensation for the Riccelli petitioners' extensive litigation expenses and consideration for giving up rights to interpose claims related to the trust that accrued to them during their action. Assuming defendant could prove its assertion, there is no analogue in the 2013 agreements for litigation expenses related to a challenge in which they were not a party. In that case, the offset or relevant portion thereof for litigation expenses would not trigger the MFN clause.
On the other hand, the 2013 agreements contained multiple provisions addressed to terminating trust-related litigation and relinquishing rights thereto; thus, if the offsets or some portion thereof were consideration for agreeing to those terms, they would trigger the MFN clause. We are unpersuaded by defendant's theory that, because the litigation rights disclaimed by the Riccelli petitioners in exchange for the offsets are unique to their action, they are beyond the scope of the MFN clause. The 2013 agreements required each claimant to discontinue and refrain [*4]from commencing trust-related actions against the Board, other settling members and the trust's former administrator, actuary, auditor and trustees. In addition, each claimant released the Board from all claims accruing or "that might subsequently accrue to [the claimant], by reason of any matter or thing whatsoever, and . . . that in anyway relates to or is connected with, directly or indirectly, the [claimant's] former [trust] membership." Reading these terms in "light of the contractual obligation as a whole and the intention of the parties manifested thereby" (U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 38 NY3d 169, 180 [2022] [internal quotation marks, brackets and citations omitted]), they clearly embrace the same subject matter as the litigation rights that the Riccelli petitioners surrendered in exchange for the offsets.
Turning to the parties' motions, the elements of a breach of contract claim are "the existence of a contract, the performance of [the claimant's] obligations under the contract, the failure of the defendant to perform its obligations and damages resulting from the defendant's breach" (Daire v Sterling Ins. Co., 204 AD3d 1189, 1190 [3d Dept 2022] [internal quotation marks, brackets and citation omitted]; see Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1055 [3d Dept 2009]). By positing that the Board was not required by the MFN clause to provide claimants with the Riccelli offsets, defendant takes aim at the third element.
Michael Papa, deputy counsel for the Board, states in a supporting affidavit that the Riccelli petitioners refused to settle on terms that "placed them in a significantly worse economic position than the other former members of [the trust]." They therefore required "an offset from the broader amount to be collected from" the other trust members, "given the benefits accruing to such members as a result of the" Riccelli action. According to Papa, the monthly offsets were awarded as partial compensation for, among other things, dismissal of the Riccelli action, forbearance of trust-related claims and the "global [litigation] expenses" incurred by the Riccelli petitioners in that action.
Papa's explanation is at odds with the Riccelli stipulation itself, which is silent on litigation expenses incurred by the Riccelli petitioners. Instead, the offsets are described as consideration for most of the obligations assumed by the Riccelli petitioners under the stipulation, which incorporates the Riccelli petitioners' settlement agreements. Those obligations "includ[ed,] but [were] not limited to," dismissal of the Riccelli action with prejudice and waiver of their rights to collect the contempt penalty, enforce the stay, contest venue in the Board's action against nonsettling members and raise objections in a CPLR article 77 proceeding involving the former trust administrator.
The discrepancy between Papa's explanation and the Riccelli stipulation illustrates our difficulty in discerning what the monthly offsets [*5]actually represent. Absent a more fulsome explanation from someone with personal knowledge (see CPLR 3212 [b]),[FN3] expressing the offsets as monthly deductions from each Riccelli petitioner's payment means that a petitioner choosing a shorter-term payment plan would ultimately receive a smaller total offset and thereby pay more toward its share of the deficit. To explain, had Shea Nassau chosen the two-year plan, its settlement agreement shows that its monthly payment would have been $6,036.06. So far as the record reveals, however, its monthly offset would have remained $1,052.22. Thus, under the two-year plan, Shea Nassau would have paid a total of $119,636.16 toward its trust deficit liability — compared to a total of $0 under the 15-year option that it unsurprisingly chose. Logic suggests that the reimbursement component of the offset should not vary according to the repayment plan selected, calling into question Papa's explanation that the offsets partially compensated the Riccelli petitioners for their litigation expenses. Given this structure, we are unable to correlate how these payment options represent actual expenses incurred and neither could the parties do so during oral argument. As such, we conclude that defendant failed to "tender[] sufficient evidence to demonstrate the absence of any material issues of fact" with respect to whether the MFN clause applied to the offsets (McFadden v State of New York, 138 AD3d 1167, 1167 [3d Dept 2016], appeal dismissed 28 NY3d 947 [2016]), and the Court of Claims should have denied defendant's motion regardless of the sufficiency of claimants' opposing papers (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]).
Similar proof problems prevent claimants from establishing "a prima facie case entitling [them] to judgment as a matter of law on [their] breach of contract claim" (Kemper Ins. Cos. v State of New York, 70 AD3d 192, 199 [3d Dept 2009]). Claimants' demand for 100% reductions to their proportional shares is derived solely from the apparent net effect of Shea Nassau's offset. No other Riccelli petitioner's offset zeroed out its liability, raising material issues of fact regarding how the monthly offsets were calculated in the first place. Conspicuously absent from the voluminous record is admissible evidence resolving these issues — a deficiency fatal to claimants' cross motion (see CPLR 3212 [b]).
We have examined the parties' remaining arguments and find them without merit or, in light of our decision, academic.[FN4]
Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion for summary judgment dismissing the claim; motion denied; and, as so modified, affirmed.

Footnotes

Footnote 1: Claimants Todd Butler and Butler Disposal Systems have withdrawn their appeal (see 22 NYCRR § 1250.2 [b] [1]). The appeal remains pending as to the other claimants.

Footnote 2: Black's Law Dictionary defines "term" as "[a] contractual stipulation," and "terms" as "[p]rovisions that define an agreement's scope; conditions or stipulations" (Black's Law Dictionary [11th ed 2019], term).

Footnote 3: Citing Papa's affidavit, defendant represents that the Board offered the Riccelli petitioners a "global" offset — presumably meaning a lump sum — which those petitioners divvied up amongst themselves and then informed the Board of the allocation. Upon our inspection in the light most favorable to claimants as nonmoving parties (see Bouchard v State of New York, 206 AD3d 1495, 1501 [3d Dept 2022]), Papa's affidavit is insufficient to establish that the Board generated a sum that it provided to the Riccelli petitioners, nor did he provide the amount of the purported global offset.

Footnote 4: Claimants ask us to take judicial notice of a judgment entered in a Supreme Court action commenced in Wayne County by certain claimants in the instant action, which considered the same arguments now being raised in this appeal. In the Wayne County action, Supreme Court (Healey, J.) found that the MFN clause entitled those plaintiffs to the monthly offsets provided in the Riccelli action. The Fourth Department reversed that judgment, concluding that Supreme Court lacked subject matter jurisdiction (see Rice v New York State Workers' Compensation Bd., 192 AD3d 1605, 1606 [4th Dept 2021]). Consequently, the findings set forth in the Wayne County judgment have no precedential or estoppel effect (see generally Editorial Photocolor Archives v Granger Collection, 61 NY2d 517, 523 [1984] ["A judgment or order issued without subject matter jurisdiction is void"]).