Darwish Auto Group, LLC v TD Bank, N.A. (2026 NY Slip Op 01102)

Darwish Auto Group, LLC v TD Bank, N.A.

2026 NY Slip Op 01102

Decided on February 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 26, 2026

CV-24-1712 CV-24-1726 CV-25-0001
[*1]Darwish Auto Group, LLC, et al., Respondents,
vTD Bank, N.A., Defendant, and Walid Darwish, Appellant. (And a Third-Party Action.)

Calendar Date:January 12, 2026

Before:Garry, P.J., Clark, Pritzker, Powers and Corcoran, JJ.

Archer & Greiner, PC, New York City (Michael S. Horn of counsel), for appellant.
ArentFox Schiff LLP, New York City (Michael S. Cryan of counsel), for respondents.

Clark, J.
Appeals (1) from that part of an order of the Supreme Court (Richard Platkin, J.), entered September 12, 2024 in Albany County, which required defendant Walid Darwish to file an accounting and monthly statements, (2) from that part of an order of said court, entered September 12, 2024 in Albany County, which required defendant Walid Darwish to post an undertaking, and (3) from an order of said court, entered December 31, 2024 in Albany County, which, among other things, partially granted plaintiffs' motion for partial summary judgment and to dissolve a preliminary injunction.
This matter comes to us for a second time (see 224 AD3d 1115 [3d Dept 2024]). Defendant Walid Darwish (hereinafter defendant) is the member and sole shareholder, respectively, of plaintiffs Darwish Auto Group, LLC (hereinafter DAG) and Darwish General Corp. (hereinafter DGC) — entities formed in June 2021 for the purpose of acquiring and operating car dealerships. In connection with an endeavor to acquire 10 car dealerships in upstate New York, defendant also formed separate limited liability companies (hereinafter the dealership companies) pertaining to each dealership.
Defendant thereafter secured $62 million in funding from an affiliate of the Potamkin Automotive Group, 2427 Investments, Inc. (hereinafter the lender), to purchase the 10 dealerships at issue. However, the funding was conditioned upon defendant's assent to reorganize plaintiffs so that they would be controlled by a management committee and a board of directors (hereinafter the governing bodies) consisting of defendant and two individuals affiliated with the lender — i.e., third-party defendants Barry Frieder and Mark Manzo — with no member having the authority to unilaterally act on plaintiffs' behalf. Under the financing deal, plaintiffs would each hold a 50% ownership interest in the dealerships and defendant would be retained by plaintiffs to manage the dealerships pursuant to a separate employment agreement.[FN1]
A few months after the financing deal was implemented, plaintiffs commenced this action alleging that defendant had unilaterally modified access to various TD Bank accounts maintained by the dealerships without authorization. Consequently, plaintiffs' original complaint sought a declaratory judgment directing defendant TD Bank, N.A. to implement plaintiffs' requested changes to the account access and precluding defendant from making further unilateral changes thereto.[FN2] In a subsequently filed amended complaint, plaintiffs also sought a declaration that they are managed by a majority of the members of their governing bodies, instead of defendant alone, and that such governing bodies also have the authority to "manage, direct, and control the business, property, and affairs" of plaintiffs and the dealerships, including the right to direct access to the TD Bank accounts and to authorize dealership sales "without interference from" defendant. Plaintiffs' amended complaint also interposed claims for breach [*2]of contract and breach of fiduciary duties based upon, among other things, defendant's alleged interference with the directives of plaintiffs' governing bodies and his refusal to cooperate with potential dealership sales. Defendant joined issue, asserted various counterclaims and affirmative defenses, and commenced a third-party action against four named individuals affiliated with the lender — including Frieder and Manzo — as well as 10 Jane and John Does.
Following extensive procedural history not directly relevant here, plaintiffs discovered that defendant had initiated an unauthorized advance of several million dollars from Ford Motor Credit Company LLC (hereinafter referred to as the Ford Advance) against certain future profits from the Ford dealerships operated by plaintiffs. Consequently, plaintiffs moved for a preliminary injunction requiring defendant to return the allegedly misappropriated funds and to cease further dissipation of company assets during the pendency of the action. In February 2024, Supreme Court partially granted the motion to the extent of enjoining defendant from dissipating "any of the [Ford Advance] funds in his possession," but otherwise denied the remainder of the relief requested in the motion.
Upon learning that defendant had dissipated a large portion of the Ford Advance funds, plaintiffs moved to, among other things, compel defendant's compliance with the February 2024 order. Around the same time, defendant filed a motion alleging that plaintiffs and the third-party defendants were in ongoing negotiations for the sale of certain dealerships and sought, among other things, a preliminary injunction barring the sale, disposition or transfer of the dealerships, as well as their associated real estate, during the pendency of the action.
By decision and order entered September 12, 2024 (hereinafter the first preliminary injunction order), Supreme Court denied so much of plaintiffs' motion as sought to compel defendant's return of the Ford Advance funds, but directed defendant to provide an accounting of such funds within 30 days and to furnish monthly account statements to plaintiffs thereafter. In a second order entered the same date (hereinafter the second preliminary injunction order), Supreme Court, as relevant here, enjoined plaintiffs and the third-party defendants from transferring or disposing of the dealerships during the pendency of the action and directed that defendant post an undertaking of $3 million within 30 days (see CPLR 6312 [b]).
Prior to entry of the two preliminary injunction orders, plaintiffs moved for partial summary judgment on liability relative to all of their claims. Defendant opposed the motion and cross-moved for partial summary judgment on certain of his counterclaims and third-party claims, arguing, among other things, that he owned and controlled the dealerships, that he "never agreed to [a] change in the status of the management of" plaintiffs, and that plaintiffs and the third-party [*3]defendants misappropriated dealership funds, used his confidential bank token to conceal the misappropriation, and engaged in a scheme to oppress him and destroy the dealerships' business. Defendant also moved to reargue and/or renew so much of the second preliminary injunction order as required him to post an undertaking, and plaintiffs moved to dissolve the second preliminary injunction order precluding the sale of the dealerships during the pendency of the action.
By decision and order entered December 31, 2024, Supreme Court granted plaintiffs' motion for partial summary judgment, denied defendant's cross-motion for partial summary judgment, denied defendant's motion to reargue and/or renew, and granted plaintiffs' motion to dissolve the second preliminary injunction order. Supreme Court found, as relevant here, that plaintiffs were entitled to summary judgment on their claim seeking a declaration that plaintiffs and the dealerships are managed and controlled by the governing bodies and not by defendant alone, rejecting defendant's arguments in opposition and concluding that there were no triable issues of fact precluding judgment as a matter of law in that regard. Supreme Court also concluded that plaintiffs established their entitlement to summary judgment on their breach of contract claim alleging that defendant breached his employment agreement with plaintiffs by interfering with the directives of their governing bodies, and that he also breached his fiduciary duties to plaintiffs by converting the Ford Advance, as well as another advance from Nissan Extended Services North America (hereinafter the Nissan Advance), to his own benefit.
As for defendant's cross-motion, Supreme Court found that there were outstanding questions of fact precluding judgment as a matter of law in his favor on certain of his counterclaims and third-party claims, and that he otherwise did not meet his prima facie burden on his claims for an accounting and declaratory relief. In conjunction with its determination that plaintiffs' governing bodies are authorized to manage the dealerships without interference from defendant, Supreme Court held that the second preliminary injunction order barring plaintiffs' sale of the dealerships was "erroneously granted and should be dissolved," rendering academic defendant's challenge to the amount of the undertaking ordered in connection therewith. Defendant appeals from so much of the first preliminary injunction order as directed an accounting of the Ford Advance funds, so much of the second preliminary injunction order as directed him to post an undertaking, and the entirety of the December 2024 order.[FN3]
Turning first to the appeal from the first preliminary injunction order, we disagree with defendant's contention that Supreme Court exceeded its powers by sua sponte directing an accounting of the Ford Advance funds. Although plaintiffs' notice of motion to compel did not specifically seek an accounting of such funds (see CPLR [*4]2214 [a]), it contained a general prayer for "further relief as the Court deems just," thereby authorizing the court, in its discretion, "to grant relief that [was] not too dramatically unlike that which [was] actually sought" (Meadow at Clarke Hollow Bay, LLC v White, 155 AD3d 1325, 1325-1326 [3d Dept 2017] [internal quotation marks and citation omitted]; see Willette v Willette, 53 AD3d 753, 755 [3d Dept 2008]). An accounting of the Ford Advance funds was aimed at preventing the further dissipation of such funds in defendant's possession and, thus, served a similar purpose as plaintiffs' request to compel compliance with the February 2024 order precluding the dissipation of such funds. Supreme Court's order directing an accounting of such funds was also grounded in a sufficient evidentiary basis (compare Bank of Am., N.A. v Amigon, 241 AD3d 479, 481 [2d Dept 2025]) and we discern no "substantial prejudice" to defendant in the court having done so (Czajka v Pendell, 174 AD3d 970, 971 [3d Dept 2019] [internal quotation marks and citation omitted]).
Next, defendant's appeal from the second preliminary injunction order challenging the amount of the undertaking issued in connection therewith must be dismissed. The December 2024 order on the parties' respective summary judgment motions dissolved the second preliminary injunction order, thereby also effectively terminating defendant's obligation to post an undertaking (see CPLR 6312 [b]). As no undertaking was posted by defendant and the obligation to post an undertaking is no longer effective, defendant's argument challenging the amount thereof is moot and we discern no basis to apply the mootness exception (see General Elec. Co. v Metals Resources Group, 293 AD2d 417, 419 [1st Dept 2002]; Honeywell, Inc. v Technical Bldg. Servs., 103 AD2d 433, 435 [3d Dept 1984]).
We also discern no basis upon which to disturb Supreme Court's grant of summary judgment to plaintiffs on their claim for declaratory relief. In that regard, plaintiffs sought, among other things, a declaration that a majority of the members of their governing bodies "have the power to manage, direct, and control the business, property, and affairs of [plaintiffs] and the [d]ealerships," including the right to authorize dealership sales, without interference from defendant. Entitlement to such a declaration turns on an interpretation of the relevant corporate documents at issue and is subject to ordinary principles of contract interpretation (see Harris v Reagan, 177 AD3d 1056, 1057 [3d Dept 2019]; Maldonado v DiBre, 140 AD3d 1501, 1506 [3d Dept 2016], lv denied 28 NY3d 908 [2016]). Contracts must be "construed in accord with the parties' intent" (Ficel Transp., Inc. v State of New York, 209 AD3d 1153, 1155 [3d Dept 2022] [internal quotation marks and citations omitted]), which is best adduced through the contractual language itself (see Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). Thus, "a written agreement that is complete, clear [*5]and unambiguous on its face must be enforced according to the plain meaning of its terms" (Donohue v Cuomo, 38 NY3d 1, 13 [2022] [internal quotation marks, brackets, and citations omitted]; see U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 38 NY3d 169, 178 [2022]; Greenfield v Philles Records, 98 NY2d at 569). Whether a contract is ambiguous is a question of law that requires resort to "the four corners of the document," affording each term its "plain and ordinary meaning" and without consideration of "outside sources" (Daire v Sterling Ins. Co., 204 AD3d 1189, 1190-1191 [3d Dept 2022] [internal quotation marks and citations omitted]; see Integrity Intl., Inc. v HP, Inc., 211 AD3d 1194, 1196 [3d Dept 2022]).
In support of their motion for summary judgment, plaintiffs submitted, among other things, the Borrowing Agreement defendant signed to secure the $62 million in funding to purchase the dealerships, which, as relevant here, stated that DAG would be governed by the terms of an amended Operating Agreement, dated April 18, 2022, and DGC would be governed by the terms of a Shareholder's Agreement executed the same date (hereinafter collectively referred to as plaintiffs' amended governing documents). The Borrowing Agreement further provided that plaintiffs would be managed by three-member governing bodies, which, in turn, would have "the right, power and authority to make all decisions on behalf of each of the [d]ealership [c]ompanies," including "all decisions regarding the acquisition, management . . . , operations, financing, accounting and sale of any or substantially all of . . . their assets."
Consistent with the Borrowing Agreement, plaintiffs' amended governing documents, which bear defendant's signature, expressly delegated management of plaintiffs to their governing bodies and provided that a "decision by [a] majority" of the members thereof "shall be required to authorize any actions taken" on plaintiffs' behalf. The amended governing documents also granted plaintiffs' governing bodies the right to manage "the business, property and affairs of the [d]ealership [c]ompanies, so long as the [d]ealership [c]ompanies are member managed and owned directly by [plaintiffs]." Defendant signed documents in which he delegated himself, as well as Frieder and Manzo, as the members of plaintiffs' governing bodies, and signed his employment agreement with DGC, which listed defendant as the president of the dealerships, provided that he would "report to [plaintiffs' governing bodies]" in that capacity.
Based upon the plain and unambiguous language of the aforementioned documents, we agree with Supreme Court that plaintiffs established, prima facie, that defendant delegated plaintiffs' management to three-member governing bodies, which, in turn, also had the right to manage the affairs of the dealerships, including the right to authorize their sale (see generally U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 38 NY3d at 178; Donohue v Cuomo, 38 NY3d at 13). The [*6]burden therefore shifted to defendant to demonstrate a triable issue of fact in opposition to plaintiffs' cause of action seeking a declaration to that end.
We agree with Supreme Court that defendant did not satisfy such burden. In that regard, defendant submitted several corporate documents that he claimed raised a question of fact as to plaintiffs' management structure, including copies of plaintiffs' original governing documents that were in existence prior to the funding deal. Although plaintiffs' original governing documents set forth that defendant had exclusive management authority over plaintiffs at the time they were in existence, this does not create a question of fact as to plaintiffs' current management structure, as the amended governing documents contained a clear and unambiguous merger clause providing that they superseded "all prior and contemporaneous" agreements on the same subject matter (see Xi Mei Jia v Intelli-Tec Sec. Servs., Inc., 114 AD3d 607, 608 [1st Dept 2014]; Kindler v Newsweek, Inc., 277 AD2d 159, 160 [1st Dept 2000]). Nor did defendant establish a triable issue of fact by highlighting portions of his deposition testimony during which he indicated he had not reviewed the amended governing documents prior to signing them. The record confirms that defendant, a sophisticated party, was represented by counsel in connection with the transaction and his purported failure to review such documents does not render them unenforceable (see Wu v Uber Tech., Inc., 43 NY3d 288, 299-300 [2024]; Chimart Assoc. v Paul, 66 NY2d 570, 574 [1986]; Da Silva v Musso, 53 NY2d 543, 550 [1981]). Notwithstanding his representations to the contrary in several court filings, defendant also maintains that the operating agreements for the dealership companies establish his status as sole member/owner of the dealerships with the exclusive right to manage their affairs.[FN4] However, the dealership operating agreements state that the dealership companies would be "managed by all LLC members," list defendant as merely the "initial" member, and define plaintiffs as the "limited liability company member[s]" who made "capital contribution[s] . . . in exchange for their LLC ownership." Such language unambiguously establishes plaintiffs' ownership interest in the dealership companies.[FN5] The Borrowing Agreement defendant signed to obtain the funding to purchase the dealerships, as well as a corresponding Contribution Agreement, also establish plaintiffs' ownership of the dealerships. In our view, rather than supporting defendant's claim that he is the sole member/owner of the dealership companies with the exclusive authority to make decisions on their behalf, the dealership operating agreements, when read in conjunction with the Contribution Agreement and the Borrowing Agreement, conclusively establish otherwise.
Defendant's attempt to establish a triable issue of fact based on the manufacturer agreements he entered into with the dealerships' franchisors fares [*7]no better. Although those agreements listed defendant as "Dealer Principal," "Principal Owner" or "Executive Manager" of the dealerships with varying degrees of management authority and generally prohibited anyone else from serving in such role without the consent of the manufacturers, the manufacturer agreements have no bearing on plaintiffs' management structure and do not supplant the plain and unambiguous language of plaintiffs' amended governing documents (see Zinter Handling, Inc. v General Elec. Co., 101 AD3d 1333, 1337 [3d Dept 2012]). As noted by Supreme Court, defendant's management role as set forth in the manufacturer agreements is consistent with the terms of defendant's employment agreement with DGC, which was executed in connection with the funding deal and contemplated defendant's active and substantial management role over the dealerships. As such, the manufacturer agreements do not raise a triable issue of fact in opposition to plaintiffs' claim for declaratory relief.
To the extent defendant continues to argue, as he did below, that plaintiffs' amended governing documents never became effective since they were not approved by the manufacturers, such claim is also unavailing. Indeed, manufacturer approval was not a condition precedent to the amended governing documents becoming effective (see Rooney v Slomowitz, 11 AD3d 864, 866 [3d Dept 2004]; compare MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 646 [2009]). Nor does the parties' postclosing conduct raise a triable issue of fact in opposition to plaintiffs' claim for declaratory relief, as parol evidence may not be used to establish a question of fact where, as here, the language of the underlying agreements is clear and unambiguous (see Gaudette v Gaudette, 222 AD3d 1313, 1316 [3d Dept 2023]; United States Fid. & Guar. Co. v Delmar Dev. Partners, LLC, 14 AD3d 836, 838 [3d Dept 2005]; Estate of Hatch v NYCO Mins., 245 AD2d 746, 749 [3d Dept 1997]).
Contrary to defendant's contention, Supreme Court also properly rejected his waiver, modification and abandonment defenses relative to the amended governing documents. The evidence adduced in support of the parties' respective motions demonstrates that the other two members of plaintiffs' governing bodies have consistently exercised their management prerogatives under the amended governing documents in a manner evincing an unequivocal intent not to abandon such agreements (compare Steven Strong Dev. Corp. v Washington Med. Assoc., 303 AD2d 878, 881 [3d Dept 2003]). Moreover, the amended governing documents required a signed writing to waive or modify their terms, which did not occur here (see generally Del Gallo Country Pools, Inc. v Kulbako, 173 AD3d 1399, 1401 [3d Dept 2019]; Turk v Anello, 280 AD2d 819, 821 [3d Dept 2001]). We have considered defendant's remaining arguments in opposition to plaintiffs' claim for declaratory relief and in support of his cross-motion, including his arguments pertaining to equitable estoppel[*8], fraudulent inducement and corporate oppression, and find that Supreme Court properly rejected them as a matter of law (see Suber v Churchill Owners Corp., 228 AD3d 414, 415 [1st Dept 2024]; DuBow v Century Realty, Inc., 172 AD3d 622, 622 [1st Dept 2019]; compare Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 106-107 [2006]).
Next, we are unpersuaded by defendant's contention that Supreme Court erroneously granted plaintiffs summary judgment on their claim for breach of fiduciary duties in connection with defendant's alleged conversion of the Ford and Nissan Advances.[FN6] "A cause of action for breach of fiduciary duty requires the existence of a fiduciary relationship, misconduct by the defendant[ ] and damages directly caused by the misconduct" (Amici v Mazza, 234 AD3d 1170, 1173 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 44 NY3d 902 [2025]; see Delibasic v Manojlovic, 174 AD3d 1096, 1096 [3d Dept 2019]). Here, there is no dispute that defendant, as a manager and director of plaintiffs, owed fiduciary duties to plaintiffs, which encompassed a duty to act in good faith and refrain from converting corporate funds to his own benefit (see Chan v Havemeyer Holdings LLC, 223 AD3d 403, 403 [1st Dept 2024]; M & M Country Store, Inc. v Kelly, 159 AD3d 1102, 1103 [3d Dept 2018]; see also Business Corporation Law § 717 [a]; Limited Liability Company Law § 409 [a]). Despite the fact that the agreements authorizing the Ford and Nissan Advances stated that the advance funds were being "pa[id] to the [d]ealership[s]," defendant conceded during a deposition that the advances were placed directly into his personal bank account, were not recorded in the dealerships' financial records, and that he spent all but $200,000 of the funds to pay personal debts, to purchase a home for his parents, and to invest in a relative's business. Given such proof, coupled with the evidence that plaintiffs have incurred damages as a result of defendant's conduct, plaintiffs satisfied their prima facie burden on their claim for breach of fiduciary duties (see Taylor v Wynkoop, 132 AD3d 843, 845-846 [2d Dept 2015]; Calabrese Bakeries, Inc. v Rockland Bakery, Inc., 102 AD3d 1033, 1038 [3d Dept 2013]; Alexander & Alexander of N.Y. v Fritzen, 147 AD2d 241, 246 [1st Dept 1989]). In opposition, defendant maintains that there is a question of fact as to whether the advances constituted part of his compensation for managing the dealerships. However, defendant offered no support for this proposition beyond his own conclusory assertions (see Ithaca Montessori Sch. v Pfeffer, 239 AD3d 1128, 1131 [3d Dept 2025]; JPMorgan Chase Bank, N.A. v Verderose, 154 AD3d 1198, 1200 [3d Dept 2017]), and his employment agreement with plaintiffs clearly delineated the terms of his yearly salary and bonus. On this record, we discern no basis upon which to disturb the grant of summary judgment to plaintiffs on their claim for breach of fiduciary duties[*9].
We also conclude that the award of summary judgment to plaintiffs on their breach of contract claim relative to defendant's failure to comply with his employment agreement was warranted. By its express terms, defendant's employment agreement with plaintiffs required him to "follow all policies and procedures" of plaintiffs' governing bodies and provided that his "duties and responsibilities may be extended or curtailed" at their discretion. The record contains overwhelming evidence establishing that defendant, in breach of such agreement, failed to recognize the authority of plaintiffs' governing bodies and to abide by the decisions of the majority of their members, including by refusing to cooperate with efforts to sell the dealerships and cutting off administrative access to the TD Bank accounts. In an attempt to raise a triable issue of fact in this regard, defendant primarily relies on the same defenses and arguments he made in opposition to plaintiffs' motion for summary judgment on their claim for declaratory relief, which, as previously noted, were properly rejected by Supreme Court. Even construing the proof in the light most favorable to defendant as the nonmoving party (see Golobe v Mielnicki, 44 NY3d 86, 92 [2025]), defendant has not established the existence of any triable issues of fact precluding judgment as a matter of law in plaintiffs' favor on their breach of contract claim (see Liberty Mut. Ins. Co. v PMI Newco, LLC, 225 AD3d 941, 942 [3d Dept 2024]).
Contrary to defendant's contention, Supreme Court also properly denied his cross-motion for summary judgment on certain of his counterclaims and third-party claims. There is a direct factual dispute with respect to defendant's claims premised upon the alleged misuse of his confidential bank token by plaintiffs' chief financial officer, rendering a trial on that issue necessary (see Marcellus Energy Servs. LLC v Tompkins Ins. Agencies, Inc., 238 AD3d 1366, 1371 [3d Dept 2025]). There are also outstanding questions of fact on defendant's breach of fiduciary duty claim, and defendant otherwise failed to satisfy his prima facie burden on the remaining counterclaims/third-party claims that were the subject of his cross-motion. Moreover, defendant's argument that Supreme Court erred in denying his cross-motion for summary judgment pertaining to his counterclaim/third-party claim for an equitable accounting is raised for the first time in his reply brief and, thus, we deem such argument to be abandoned (see Stone Cast, Inc. v Couch, Dale Marshall P.C., 242 AD3d 1415, 1416 n 1 [3d Dept 2025]). Defendant's remaining contentions, to the extent not expressly addressed herein, have been considered and found unavailing.
Garry, P.J., Pritzker, Powers and Corcoran, JJ., concur.
ORDERED that the order entered September 12, 2024, which required defendant Walid Darwish to file an accounting and monthly statements, is affirmed, without costs.
ORDERED that the appeal from the order entered September [*10]12, 2024, which required defendant Walid Darwish to post an undertaking, is dismissed, as moot, without costs.
ORDERED that the order entered December 31, 2024 is affirmed, without costs.

Footnotes

Footnote 1: Pursuant to the terms of a contribution agreement defendant signed in connection with the funding deal, plaintiffs would subsequently assign their membership interests in the dealerships to a new entity – i.e., DP Dealership Holdings, LLC – once each manufacturer affiliated with the dealerships consented to the change in ownership.
 

Footnote 2: Plaintiffs also sought a preliminary injunction requesting such relief during the pendency of the action, which Supreme Court granted and which this Court affirmed upon defendant's appeal (see 224 AD3d at 1119). 
 

Footnote 3: This Court denied defendant's motion to stay the December 2024 order pending appeal (see 2025 NY Slip Op 61896[U] [3d Dept 2025]). Defendant has since noticed an appeal from a subsequent Supreme Court order granting a motion by plaintiffs to strike his demand for a jury trial and denying a motion by plaintiffs for sanctions; such appeal has yet to be perfected. A review of NYSCEF reveals that, as of December 1, 2025, a nonjury trial in this matter was ongoing. During oral argument before this Court, counsel for plaintiffs confirmed that the dealerships have been sold.
 

Footnote 4: As previously noted, under the amended governing documents, plaintiffs' direct ownership of the dealership companies was a condition precedent to their governing bodies having the authority to manage the affairs of the dealerships.
 

Footnote 5: Although the operating agreement for one dealership company – i.e., WD Amsterdam, LLC – lists defendant as 100% owner of that company and counsel for the third-party defendants revealed during a deposition that such operating agreement had not been superseded "at the dealership level," a subsequently executed Contribution Agreement signed by defendant in April 2022 in connection with the funding deal represented that plaintiffs "each own[ ] [50%] of the membership interests" in the dealership companies, including WD Amsterdam. The corresponding Borrower Agreement made a similar representation.
 

Footnote 6: Although defendant correctly notes that plaintiffs' amended complaint did not discuss the advances in connection with their claim for breach of fiduciary duties, "summary judgment may be granted on an unpleaded cause of action" where, as here, "the proof supports such a cause of action and the opposing party has not been misled to its prejudice" (Village of Sharon Springs v Barr, 165 AD3d 1445, 1447 [3d Dept 2018] [internal quotation marks and citation omitted]).